**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**BLACK KNIGHT, INC.,**

                                             **CASE NO. 3:20-cv-00660-32PDB**

                                             **DISPOSITIVE MOTION**

               **Plaintiff,**

**v.**

**PENNYMAC LOAN SERVICES, LLC**

               **Defendant.**

_____/

**<u>DEFENDANT PENNYMAC LOAN SERVICES, LLC'S MOTION TO DISMISS</u>**
**<u>(ORAL ARGUMENT REQUESTED)</u>**

**I. INTRODUCTION**

      This complaint is an improper appeal. Circuit Court Judge Virginia B. Norton twice rejected the same arguments Black Knight, Inc. raises, ruling PennyMac did not waive arbitration and the American Arbitration Association would decide the parties' dispute. Judge Norton's orders are presently under review by Florida's First District Court of Appeal.

      The state-court lawsuit started when Black Knight LLC[1]—Black Knight, Inc.'s subsidiary—sued PennyMac asserting contract breach and trade secret claims arising from an alleged breach of the Master Agreement, Black Knight LLC's required contract. Both sides agree those claims are arbitrable. But, when PennyMac moved to compel arbitration, Black Knight LLC argued PennyMac waived its arbitration right because PennyMac sued Black Knight, Inc. in federal court. Judge Norton held there was no knowing waiver.

---

[1] "Black Knight LLC" means Black Knight Servicing Technologies, LLC.

Judge Norton rejected Black Knight LLC's waiver argument again when it sought reconsideration after PennyMac dismissed the federal case to consolidate those claims with Black Knight, LLC's claims in the compelled arbitration.  Black Knight LLC strangely argued adding the claims to arbitration was evidence of PennyMac's waiver.  Judge Norton disagreed, holding PennyMac's actions were "consistent with" her order and did not evidence waiver.

Black Knight LLC appealed Judge Norton's orders, and Black Knight, Inc. moved to dismiss the arbitration based on waiver, later changing course by answering and raising waiver as an affirmative defense in arbitration.  Black Knight, Inc., nevertheless, asks this Court—a third forum—to step in.  This is a clear attempt to avoid what Black Knight, Inc. thinks will be an affirmance by the First District Court of Appeal in a race to *res judicata*.  This Court should abstain to avoid sitting as an appellate court.

Even without the appeal, Black Knight, Inc. is collaterally estopped from relitigating waiver.  Judge Norton held PennyMac did not knowingly waive arbitration by litigating against Black Knight, Inc.  Collateral estoppel does not allow this Court to rule differently.

Even if the Court were inclined to review this case on the merits, it should find as a matter of law, like Judge Norton, that PennyMac did not waive its right to arbitrate claims against Black Knight, Inc.  Filing the federal action alone was not substantial litigation invocation.  PennyMac requests prejudicial dismissal.

## II. BACKGROUND AND COMPLAINT ALLEGATIONS

PennyMac is a residential mortgage servicer and lender.  (Doc. 1 (**Compl.**) ¶ 9.)

Black Knight, Inc., among other things, provides mortgage servicing software, "MSP," to mortgage servicers through its subsidiary Black Knight LLC.  (Compl. ¶ 8.)

53940321;1

In 2008, PennyMac and Black Knight LLC's alleged predecessor-in-interest (Fidelity Information Services, Inc.) entered into the Master Agreement whereby PennyMac became a user of the MSP system.  (*See* Doc. 1-1.)  Fidelity drafted the Master Agreement.  (*Id.* (describing PennyMac as "client").)  It includes the following:

> **18.3 <u>Binding Arbitration.</u>** Fidelity and [PennyMac] stipulate and agree that if they are unable to resolve any controversy arising under this Agreement . . . then such controversy, and ancillary claims not so resolved and not so subject, shall be submitted to binding arbitration at the election of either party . . . .

> **32.  GOVERNING LAW** This Agreement shall be considered as entered into in the State of Florida and shall be governed by and construed in accordance with the laws of the State of Florida. Any action or proceeding based upon this Agreement or arising out of its performance shall be brought in a federal or state court of competent jurisdiction in Florida.

(*Id.*)

PennyMac used MSP for years, but MSP—a 50-year-old DOS-based system—was antiquated and underperforming.  (Doc. 1-6 at 21.)  PennyMac timely informed Black Knight LLC (and Black Knight, Inc.) it would not renew its MSP license, intending to replace MSP with its own proprietary platform, Servicing Systems Environment ("SSE").  (*Id*. at 23.)

PennyMac wished to continue using other Black Knight products.  (*Id.* at 24.)  Black Knight, Inc. refused and terminated PennyMac's access to the products.  (*Id.*)

On November 5, 2019, Black Knight LLC sued PennyMac in Florida state court asserting PennyMac breached the Master Agreement and violated Florida trade secret laws by developing SSE.  (*See* Doc. 1-5); *Black Knight Servicing Technologies, LLC v. PennyMac Loan Services, LLC*, Case No. 2019-CA-007908 (Fla. 4th Cir. Ct. 2019).  Black Knight LLC sought damages exceeding $340 million as well as equitable and declaratory relief.  (*Id.*) PennyMac denies these allegations and any damages claim.

A day later, PennyMac filed a complaint against Black Knight, Inc. only in California federal court, alleging Black Knight, Inc. is a monopolist engaging in anticompetitive conduct violating federal antitrust laws, various California consumer protection statutes, and California common law.  (*See* Doc. 1-2 & 1-4; *PennyMac Loan Services, LLC v. Black Knight, Inc.*, Transfer Case No. 3:20-cv-00148-HES-PDB (M.D. Fla. 2019).)

On January 2, 2020, Black Knight, Inc. moved to transfer PennyMac's action to this district under the Master Agreement's venue requirements.  (Doc. 1-3 at 1.)  PennyMac opposed, arguing Black Knight, Inc. was not a party to the Master Agreement and the venue provision was inapplicable.  (*Id.*)

On February 13, 2020, the California federal district court transferred the case, concluding PennyMac's claims were "based upon" the Master Agreement and the Master Agreement's venue provision should be enforced.  (*See id.* at 7.)  The court also held "the interests of justice weigh in favor of transfer given that [Black Knight LLC's state complaint] is already pending and involves overlapping facts, issues, and evidence" and that "[l]itigating these cases in a single forum would spare the parties and witnesses the time and expense of travelling to two different forums."  (*Id.* at 9.)  The court also denied Black Knight, Inc.'s pending motion to dismiss as moot.  (*Id.*)

Before the federal court ruled on transfer and without substantively responding to the litigation, on January 6, 2020, PennyMac moved to compel arbitration of Black Knight LLC's

state court litigation.  (*See* COMP. EX. 1 at 2.)[2]  Seeking arbitration was PennyMac's first and only step in state court.  (*Id.*)

Black Knight LLC did not challenge the arbitration clause or its applicability.  Relying on the federal court's venue transfer order, Black Knight LLC's sole argument was PennyMac waived arbitration by filing the antitrust claims against Black Knight, Inc. in federal court. (*See* EX. 2 at 15.)  According to Black Knight LLC (and Black Knight, Inc.), the federal antitrust claims were arbitrable, but, "because PennyMac elected not to arbitrate its arbitrable claims, it [] waived the right to compel arbitration of all claims arising under the Master Agreement, including any such claims raised by [Black Knight LLC]."  (*Id.* at 13 (emphasis added); Ex. 4 at 33; 45-48.)

In light of the federal court's transfer order, PennyMac acknowledged the efficiency of combining the two matters if Judge Norton compelled arbitration, which PennyMac explained in its reply brief supporting its motion to compel arbitration filed March 3, 2010.  (*See* EX. 3.)

---

[2] The Court should judicially notice the following state court records attached to this motion: **(1)** the docket from the state circuit court and appeal (**COMPOSITE EXHIBIT 1**); **(2)** Black Knight LLC's opposition to PennyMac's motion to compel (**EXHIBIT 2**); **(2)** PennyMac's reply supporting arbitration (**EXHIBIT 3**); **(4)** motion to compel hearing transcript (**EXHIBIT 4**); **(5)** Black Knight LLC's motion for reconsideration (**EXHIBIT 5**); **(6)** reconsideration motion hearing transcript (**EXHIBIT 6**); **(7)** reconsideration order (**EXHIBIT 7**); and **(8)** Black Knight LLC's initial appellate brief (**EXHIBIT 8**).

"A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment."  *Universal Express, Inc. v. United States SEC*, 177 F. App'x 52, 53 (11th Cir. 2006) (citing *Bryant v. Avado Brands, Inc*., 187 F.3d 1271, 1278 (11th Cir. 1999)).  "Public records are among the permissible facts that a district court may consider."  *Id.*  PennyMac is not asking the Court to notice the truth of the statements in these filings, only the fact that the arguments were made and considered and are now before the Florida appellate court for purposes of PennyMac's collateral estoppel and abstention arguments.  *See Haddad v. Dudek*, 784 F. Supp. 2d 1308, 1324 (M.D. Fla. 2011) (judicial notice appropriate to decide collateral estoppel).

On April 6, 2020, Judge Norton granted PennyMac's motion to compel arbitration, holding Black Knight LLC failed to establish PennyMac knowingly waived its right to arbitrate. (Doc. 1-5 at 4.)  The judge held:

> Reviewing the totality of the circumstances, the Court finds [Black Knight LLC] failed to establish PennyMac knowingly waived its right to arbitrate [Black Knight LLC]'s claims. PennyMac's first and only action in this case was seeking to compel arbitration. PennyMac has not answered the complaint, engaged in any discovery, or otherwise taken any act to participate in this case inconsistent with its right to arbitrate.
>
> . . . . With regard to the Federal Litigation, PennyMac consistently argued those claims were not based on the Master Agreement. While the federal district court disagreed in granting the motion to transfer, there was no action by PennyMac that constituted a waiver of its right to arbitrate in this case, where PennyMac's first and only action was to move to compel arbitration. The parties have not engaged in any substantive litigation in the Federal Litigation, and there has been no advantage to PennyMac in this case by filing the Federal Litigation in a different forum.

(*Id.* at 4-5 (citations omitted).)

Less than two weeks later, on April 17, 2020, <u>before</u> Black Knight, Inc. was required to respond to PennyMac's complaint, PennyMac voluntarily dismissed the federal action without prejudice. (Ex. 5.) PennyMac stated it "will bring the claims raised [there] as defenses, third party claims, and/or counterclaims in arbitration." (*Id.*)

PennyMac initiated arbitration on April 28, 2020, including both Black Knight LLC's complaint as well as its own antitrust complaint. (Doc. 1-5.)

Rather than proceed in arbitration, Black Knight LLC asked Judge Norton to reconsider her order compelling arbitration, renewing its original argument that, by "electing to litigate the [federal antitrust] claims," PennyMac waived "any right to compel arbitration of any other claims under the Master Agreement." (*See* Ex. 5.) Black Knight LLC illogically added that

53940321;1

PennyMac's dismissal of the federal case in favor of pursuing those claims in arbitration further demonstrated waiver.  (*Id.*)  Judge Norton again rejected Black Knight LLC's arguments, finding no waiver.  (*See* Ex. 7.)  She expressly confirmed, "[A]ll events cited by Black Knight [LLC] [as evidence of waiver] occurred after this Court ordered arbitration and <u>are both consistent with the ordered arbitration and with PennyMac's arguments to this Court</u> that it would potentially seek to consolidate the federal antitrust action with this case if arbitration was compelled."  (*See id.* at 1-2 (emphasis added).)

Black Knight LLC appealed, still arguing PennyMac waived arbitration of all claims. (*See* Ex. 8); *Black Knight Servicing Technologies, LLC v. PennyMac Loan Services, LLC*, Case No. 1D20-1492 (Fla. 1st DCA 2020).

PennyMac submitted its amended demand and answer to Black Knight LLC's claims in arbitration.  (*See* Doc. 1-6.)  Black Knight, Inc. first moved to dismiss arbitration based on waiver, then it reversed course and answered, raising its waiver argument as an affirmative defense.  (Compl. ¶ 26.)

Despite Black Knight LLC's choice to litigate whether PennyMac's federal case constituted waiver with Judge Norton and also in the arbitration, Black Knight, Inc. now hopes

7

to erase history by asking this Court to ignore Judge Norton's non-waiver determination, potentially impacting the pending appeal.  This Court should decline the invitation.[3]

### III. ARGUMENT

**A.    The Court Should Abstain.**

**1.    The Court should abstain under the *Brillhart* doctrine.**

District courts possess substantial discretion in determining whether to entertain Declaratory Judgment Act claims.  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282-83 (1995) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942)).

"At least where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in gratuitous interference if it permitted the federal declaratory action to proceed." *Id.* at 283 (internal citations and quotations omitted).  The first-filed rule should not be disregarded lightly, and the party objecting to jurisdiction in the first-filed forum carries the burden of proving "compelling circumstances to warrant an exception to the first-filed rule."

---

[3] PennyMac has alerted Black Knight that it will move to disqualify one of its three firms, Susman Godfrey LLP, from representing either Black Knight entity in this and any related matter, including the pending arbitration.  The parties are meeting and conferring, and PennyMac anticipates filing a motion to seal the disqualification motion shortly.  Although Susman has not yet appeared in this case, it has appeared in the related arbitration and was counseling Black Knight before this case was filed.  But, as will be shown in the disqualification motion, before representing Black Knight, Susman gained PennyMac's highly confidential information and detailed case strategy during its unsuccessful pitch to represent PennyMac in these same matters.  Based on the confidential information shared, Susman's side-switching is severely prejudicial and necessitates immediate Court action.  PennyMac respectfully requests that this Court rule on the disqualification motion before addressing dismissal.  *See, e.g., Grimes v. D.C.*, 794 F.3d 83, 90 (D.C. Cir. 2015) ("Because a conflict of interest could affect the fairness and impartiality of the proceeding, or the perception of fairness and impartiality, we hold that a plausible claim of conflict must be resolved before allegedly conflicted counsel or the court takes further action in the case."); *Bowers v. Ophthalmology Grp.*, 733 F.3d 647, 654 (6th Cir. 2013) ("A district court must rule on a motion for disqualification of counsel prior to ruling on a dispositive motion because the success of a disqualification motion has the potential to change the proceedings entirely.").

53940321;1

*Manuel v. Convergys Corp.*, 460 F.3d 1132, 1135 (11th Cir. 2005) (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982)).

The Eleventh Circuit provided "guideposts" for courts to consider when determining whether to proceed with a Declaratory Judgment Act claim while another lawsuit is pending. *See Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005). The "list is neither absolute nor is any one factor controlling." *Id.*; *see also First Mercury Ins. Co. v. Excellent Computing Distribs., Inc.*, 648 F. App'x 861, 867 (11th Cir. 2016) ("not every factor will be relevant in every case" and not having parallel proceedings is not dispositive).

Given the overlapping issues and pending appeal and arbitration, the Court should exercise its substantial deference to dismiss. The following guideposts[4] highlight why this case will inappropriately interfere with the state case:

---

[4] The full list of guideposts is:

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
> (2) whether the judgment in the federal declaratory action would settle the controversy;
> (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;
> (4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable;
> (5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;
> (6) whether there is an alternative remedy that is better or more effective;
> (7) whether the underlying factual issues are important to an informed resolution of the case;
> (8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Ameritas*, 411 F.3d at 1331.

*(1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;*
*(4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable;*
*(5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; [and]*
*(6) whether there is an alternative remedy that is better or more effective[.]*

The exact issue raised here—whether PennyMac waived arbitration as to all claims under the Master Agreement by suing Black Knight, Inc. in federal court—was decided by Judge Norton in her orders compelling arbitration and denying reconsideration.  The appeal is pending.  This Court should not decide waiver because all controversies are in arbitration and Black Knight, Inc. alleged waiver as an affirmative defense there.  (Compl. ¶ 26.)  Black Knight, Inc. knows its subsidiary faces long odds in the appeal.  Rather than wait for the First DCA to rule, it wants this Court to decide the same issue first—improperly racing to *res judicata*.  Hearing this case would interfere with Judge Norton's orders, the appellate process, and the pending arbitration.  It would result in piecemeal litigation, issue confusion, court friction, and resource waste.

The remedy provided by the state court appeal is better and more effective if Black Knight, Inc. wants the waiver issue reconsidered.  Although the issue before the First District Court of Appeal is whether PennyMac waived arbitration of the Black Knight LLC claims by filing the federal case against Black Knight, Inc., Black Knight LLC went further and put the question of waiver of arbitrability as to all claims at issue.  It did so by arguing the claims against Black Knight, Inc. were arbitrable and PennyMac's choice to file them in federal court rather than in arbitration waived *any* right PennyMac had to arbitrate any claims related to the

10

Master Agreement.  Judge Norton considered and rejected this argument twice, but Black Knight LLC is continuing the argument on appeal.  It will be decided by the appellate court. Black Knight, Inc. has also put the issue of waiver to the arbitrator twice now, as a motion and as part of its affirmative defenses.

The guideposts are not absolute.  Another reason this Court should abstain is this Court should not condone Black Knight, Inc.'s attempt to avoid portions of a contract which it has already, successfully argued should be enforced against PennyMac.  The irony is Black Knight (both Black Knight LLC and Black Knight, Inc.) apparently wants all to believe PennyMac could have brought its antitrust claims against Black Knight, Inc.—a non-signatory to the Master Agreement—in arbitration.  PennyMac did not sue Black Knight LLC.  Black Knight, Inc. as the parent is responsible for the reprehensible and monopolistic policies it has put in place through its subsidiaries.  Had PennyMac attempted to first bring its Black Knight, Inc. claims in arbitration, Black Knight, Inc. would not have agreed the claims were arbitrable. Black Knight LLC admitted this to Judge Norton.  (Ex. 5 at 34 (describing the arbitration clause in its own contract as too "bizarre and onerous" to cover its trade secret claims much less both its trade secret claims and PennyMac's antitrust claims against a non-signatory).)

Consistent with its arguments to the federal court on venue, PennyMac originally agreed its claims were not subject to the Master Agreement's arbitration provision because they were against a non-signatory to the agreement and did not base on a Master Agreement breach. PennyMac later accepted that arbitration would be most convenient for all parties, but only after **(1)** Black Knight, Inc. took the position it could enforce the Master Agreement despite not being a party to it; **(2)** Black Knight, Inc. argued PennyMac's federal claims arose from the

53940321;1

Master Agreement; **(3)** Black Knight LLC argued PennyMac's antitrust claims against Black Knight, Inc. were arbitrable; **(4)** the California district court agreed Black Knight, Inc. could enforce the Master Agreement and that PennyMac's claims are based on the Master Agreement at least for venue purposes; and **(5)** Judge Norton compelled arbitration of the Black Knight LLC claims.  PennyMac dismissed its claims within two weeks of the order compelling arbitration and before Black Knight, Inc. was required to respond to PennyMac's complaint in this district.

This case is a transparent attempt by Black Knight, Inc. to avoid the "bizarre and onerous" arbitration provision in its subsidiary's own contract while attempting to enforce its own preferred forum selection clause within the same document.  It cannot have it both ways.  There was no waiver, this case should be dismissed, and appeal and arbitration should proceed.

**2.    The *Younger*[5] Doctrine Requires Abstention.**

In addition to having the discretion to abstain under *Brillhart*, the *Younger* doctrine supports mandatory abstention.

The *Younger* doctrine prevents federal courts from interfering with certain ongoing state proceedings.  *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982).  It applies in three "exceptional" circumstances, including "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Tokyo Gwinnett, LLC v. Gwinnett County, Ga.*, 940 F.3d 1254, 1267 (11th Cir. 2019) (quoting *Younger*, 401 U.S. at 78).  When that circumstance is present, the court should abstain if: **(1)** the state judicial proceedings are ongoing, **(2)** the proceedings implicate

---

[5] *Younger v. Harris*, 401 U.S. 37 (1971).

important state interests, and **(3)** the federal plaintiff had an adequate opportunity to raise constitutional challenges in the state proceedings. *Id.*; *see also Luster v. Fla. Bar*, No. 3:18-cv-1441-J-32JBT, 2019 WL 3219662, *2-3 (M.D. Fla. July 17, 2019).

Civil proceedings seeking injunctive or declaratory relief that "effectively enjoin state proceedings," meet the initial threshold of cases subject to *Younger*. *Sundy v. Friendship Pavilion Acquisition Co., LLC*, 807 F. App'x 977, 981 (11th Cir. 2020) (quoting *Old Republic Union Ins. Co. v. Tillis Trucking Co.*, 124 F.3d 1258, 1261, 1263-64 (11th Cir. 1997)). Further, declaratory relief "interfering with a state court's ability to enforce its own judgment would indeed interfere with an order uniquely in furtherance of the state court's ability to perform its judicial functions." *Dandar v. Church of Scientology Flag Service Org., Inc.*, 24 F. Supp. 3d 1181, 1193-95 (M.D. Fla. 2014).

Black Knight, Inc.'s complaint implicates *Younger* because it effectively seeks to enjoin the pending, compelled arbitration and overrule Judge Norton's orders. While Black Knight, Inc. attempts to circumvent this result by focusing on PennyMac's direct-filed claims, PennyMac's claims cannot be excised from the state court proceedings. Black Knight LLC put the arbitrability of PennyMac's claims at issue by arguing PennyMac's filing of those claims— by itself—knowingly waived arbitration of all claims related to the Master Agreement. (*See* Ex. 2 at 13; Ex. 4 at 33, 45-48, & Ex. 5.) Judge Norton rejected this contention, confirming that arbitrating PennyMac's direct filed claims is "consistent with" her order compelling arbitration. (Ex. 7.) If Black Knight, Inc. wins, this Court would necessarily overturn part of Judge Norton's orders and interfere with the appeal.

Black Knight, Inc.'s complaint easily meets the additional *Younger* factors. *First*, because the state appeal is pending, the case is both "judicial in nature" and "ongoing." *Dandar*, 24 F. Supp. 3d at 1190-91, 1196 ("Because Dandar has appealed . . ., raising on appeal some of the same issues implicated in his request for injunctive relief before this Court, the relevant proceedings remain ongoing for the purpose of determining the application of *Younger*."); *Redner v. Citrus Cty.,* 919 F.2d 646, 649 (11th Cir. 1990) ("A state's trial and appeals process is considered a unitary system, and *Younger* prevents a federal court from disrupting the process while a case is on appeal.").

*Second*, "the Supreme Court has repeatedly recognized that states 'have important interests in administering certain aspects of their judicial systems.'" *Sundy*, 807 F. App'x at 981 (quoting *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 12-13 (1987)).  Enforcing its own orders and judgments is an important state interest. *Dandar*, 24 F. Supp. 3d at 1196.  The state court here already declined jurisdiction, compelled arbitration, and determined PennyMac has not waived arbitration by instituting litigation against Black Knight, Inc. in federal court.  The state court has an interest in carrying out its orders compelling arbitration. *See id.*

*Third*, Black Knight, Inc. cannot establish the state case did not provide an adequate remedy for its claims of waiver. *Sundy*, 807 F. App'x at 981 (quoting *31 Foster Children v. Bush*, 329 F.3d 1255, 1279 (11th Cir. 2003)).  "A federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Id.*  Black Knight, Inc., through its subsidiary, has an adequate state court remedy. Black Knight LLC opposed PennyMac's motion to compel arbitration, moved to reconsider

the resulting order, and appealed both orders all while raising the same waiver argument Black Knight, Inc. asks this Court to consider.

**B.     Black Knight, Inc. is Collaterally Estopped.**

Collateral estoppel prevents identical parties from relitigating issues already decided when **(1)** "the parties and issues [are] identical," and **(2)** "the particular matter [was] fully litigated and determined in a contest," **(3)** "which result[ed] in a final decision of a court of competent jurisdiction." *Dep't of Health & Rehabilitative Servs. v. B.J.M.*, 656 So. 2d 906, 910 (Fla. 1995); *St. Laurent v. Ambrose*, 991 F.2d 672, 675-76 (11th Cir. 1993) ("If the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect."). The litigated issue must also have been "a critical and necessary part of the prior determination." *Wingard v. Emerald Venture Fla. LLC*, 438 F.3d 1288, 1293 (11th Cir. 2006).

All elements are present here. Although the two cases involve different Black Knight entities, Black Knight LLC is a subsidiary of Black Knight, Inc. (Compl. ¶ 8.) They are privies and considered identical for collateral estoppel purposes. *See Jenkins v. Lennar Corp.*, 972 So. 2d 1064, 1066 (Fla. 3d DCA 2008) ("Because Universal is a subsidiary of Lennar, they are privies, and thus, the parties to each of the previous lawsuits are identical.").[6]

---

[6] PennyMac anticipates Black Knight, Inc. will argue PennyMac is conflating the two Black Knight entities by seeking to apply rulings from the Black Knight LLC case here. PennyMac is not conflating the two entities. One (Black Knight LLC) is a party to the Master Agreement, and the other (Black Knight, Inc.) is not. It was Black Knight LLC that placed PennyMac's case—filed against a separate entity and alleging separate claims—at issue in the Black Knight LLC case. And it was Black Knight, Inc. that successfully clothed itself in an agreement to which it was not a party in seeking to enforce it, at least as to the venue clause. Both Black Knight entities are also represented by the same counsel. Black Knight, Inc. must now live with the consequences of its, its subsidiary's, and its shared counsel's actions and the resulting orders.

15

The issues are identical.  Both cases concern waiver under the federal arbitration act.[7] Black Knight, Inc. asks this Court to hold PennyMac waived arbitration of the claims PennyMac filed in federal court.  (Compl. ¶ 22.)  In state court, Black Knight LLC asked Judge Norton to hold PennyMac waived arbitration of all claims related to the Master Agreement for the same reasons argued here.  (*See* Ex. 2 at 13, Ex. 4 at 33; 45-48.)  "All" necessarily includes PennyMac's claims filed in California.  While the ultimate relief requested in state court related to compelling arbitration of Black Knight LLC's claims only, the parties litigated, and Judge Norton ruled, PennyMac did not waive arbitration of all claims.  (Doc. 1-5 ("[Black Knight LLC] failed to establish PennyMac knowingly waived its right to arbitrate [Black Knight LLC]'s claims.").)  And, Judge Norton did this with knowledge that PennyMac may seek to add the federal claims to any compelled arbitration.  (Ex. 3.)

Judge Norton reaffirmed this ruling on reconsideration and went further.  Black Knight LLC argued PennyMac's dismissal and joinder of the federal claims in arbitration evidenced waiver.  (Ex. 5.)  In holding Black Knight LLC still failed to prove a knowing waiver, Judge Norton confirmed PennyMac's actions were "consistent with the ordered arbitration and with PennyMac's arguments to this Court."  (Ex. 7 at 1-2 (emphasis added).)  Judge Norton considered PennyMac's joinder of its claims to arbitration consistent with her determination PennyMac had not waived arbitration of all claims merely by filing the federal case.

---

[7] Although there are some PennyMac-favorable differences in how federal courts rather than Florida courts decide waiver, *see, e.g., Raymond James Fin. Servs., Inc. v. Saldukas*, 896 So. 2d 707, 711 (Fla. 2005) (unlike Eleventh Circuit authority, Florida courts do not require proof of prejudice), where the collateral estoppel elements are satisfied, the second suit is still barred even "where the second claim requires proof of different essential facts than those required to be proved in the initial suit." *Larimore v. State*, 76 So. 3d 1121, 1123 (Fla. 1st DCA 2012).

Judge Norton's determination PennyMac did not waive arbitration was critical and necessary to her orders.  There are two reasons for the critical and necessary requirement: **(1)** immaterial issues "may not have been afforded the same careful deliberation and analysis as an issue necessary to the judgment;" and **(2)** "a decision on an immaterial issue provides the losing party with no incentive to contest an erroneous decision by appeal."  *Kindapalli v. Demasi*, 551 B.R. 653, 659 (M.D. Fla. Feb. 11, 2016).  Judge Norton expressly considered and rejected Black Knight LLC's argument PennyMac knowingly waived arbitration of all claims and could not arbitrate its direct-filed claims.  (Doc. 1-5; Ex. 7.)  She concluded joinder of those claims to arbitration was "consistent with" the ordered arbitration.  (*Id.*)

Black Knight LLC also had every incentive to and did appeal those orders.  It continues arguing PennyMac waived all arbitrable claims, including the direct-filed federal claims to the First District Court of Appeal.  (Ex. 8.)

Waiver was fully briefed and argued.  Twice.  (Doc. 1-5; Exs. 2-7.)  The issue was fully litigated.  Judge Norton's orders are final for collateral estoppel purposes,[8] and Black Knight, Inc. is estopped from relitigating the issue here.

## C.    No Waiver as a Matter of Law.

Federal law favors arbitration, so any party arguing waiver bears a heavy burden of proof.  *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018).  In deciding waiver, courts consider: **(1)** whether the alleged waiving party acted inconsistently with its arbitration right under the totality of the circumstances; and, if so, **(2)** whether the waiving

---

[8] *See CCB, LLC v. BankTrust*, 552 F. App'x 963, 965 (11th Cir. 2014) ("Under Florida law, a judgment entered by a court of competent jurisdiction has preclusive effect notwithstanding a pending appeal.").

party's conduct prejudiced the party arguing waiver.  *Id.* (quoting *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315-16 (11th Cir. 2002)).

      **1.**      **PennyMac did not act inconsistently with its arbitration right.**

A key factor in determining whether a party acted inconsistently with its arbitration right is whether the party "substantially invoked the litigation machinery prior to demanding arbitration." *Gutierrez*, 889 F.3d at 1236 (quoting *S&H Contractors v. A.J. Taft Coal Co., Inc.*, 906 F.2d 1507, 1514 (11th Cir. 1990)).  "This element thus requires more than mere participation in the litigation, the participation must be substantial." *Diggett v. Swisher Int'l, Inc.*, No. 3:14-cv-242, 2014 WL 12617591, at *2 (M.D. Fla. Aug. 28, 2014).  Courts generally look to whether the alleged waiving party engaged in discovery and substantively progressed the litigation. *See id.* at *2-4 (defendant had not substantially invoked litigation machinery by filing a required responsive pleading without raising arbitration as an affirmative defense, joining a case management report, or serving written discovery).

Filing a lawsuit, standing alone, is not substantial invocation. *See, e.g., Grigsby & Assocs., Inc. v. M. Secs. Inv.*, 635 F. App'x 728, 732 (11th Cir. 2015) (defendant did not substantially invoke litigation sufficient to find waiver merely by filing lawsuits against plaintiff before dismissing in favor of arbitration, even where plaintiff moved to dismiss one of the prior lawsuits); *Steak-Out Franchising, Inc. v. Mo. Franchise Dev. Sys., LLC*, No. 1:07-cv-260, 2008 WL 11336240, at *2 (N.D. Ga. May 22, 2008) (defendants "do not cite a single case holding that a party who files a lawsuit before requesting arbitration waives its right to later seek arbitration of the same claims. In fact, the law is clear that a party seeking to compel arbitration is not required to file a pre-suit demand for arbitration."); *Drexel Burnham Lambert,*

*Inc. v. Warner*, 665 F. Supp. 1549, 1553 (S.D. Fla. 1987) (defendant's prior initiation of a state case is insufficient in itself to constitute a waiver).

This is particularly the case when the filed lawsuit is against a non-signatory to the arbitration agreement. *See Ivax Corp.*, 286 F. 3d at 1317 (defendant's lawsuit against non-signatory did not waive right to compel arbitration of separate suit against signatory).

Going further, there is no waiver of originally non-arbitrable claims where the party moved to compel arbitration only after the claims became arbitrable. *See Benoay v. Prudential-Bache Sec., Inc.*, 805 F.2d 1437, 1440 (11th Cir. 1986); *see also Guy Roofing, Inc. v. Angel Enters., LLC*, No. 17-cv-14081, 2017 WL 8890873, at *5 (S.D. Fla. Sept. 6, 2017) ("At this point, Plaintiff does not even know whether it has a right to arbitration . . . ; thus, it should not be said to have waived a right that it may not even possess.").

Black Knight, Inc. alleges PennyMac waived arbitration of its claims against Black Knight, Inc. by initiating them in federal court. "[U]nder the FAA, no party can be compelled to arbitrate unless that party has entered into an agreement to do so." *Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001).

Black Knight, Inc. is not a party to the arbitration agreement. While there are common law principles allowing a signatory such as PennyMac to compel a non-signatory to arbitrate, those theories—(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel—were not available to PennyMac at the time it initiated its complaint against Black Knight, Inc. Not until Black Knight, Inc. attempted to and successfully did invoke the forum selection provision of the Master Agreement did the theory

of equitable estoppel apply. *See, e.g., Blinco v. Green Tree Servicing LLC*, 400 F.3d 1308, 1312 (11th Cir. 2005).

And, following the transfer order, rather than continue litigating, PennyMac quickly invoked arbitration. Less than one month after the California district court held Black Knight, Inc. could invoke the Master Agreement's forum selection clause, PennyMac informed Black Knight LLC, which is represented by the same counsel as Black Knight, Inc., it intended to arbitrate the federal claims if Judge Norton compelled arbitration. And, less than two weeks after Judge Norton compelled arbitration, PennyMac acted consistent with that intent by dismissing the federal litigation to consolidate and arbitrate those claims. PennyMac invoked arbitration without engaging in any substantive litigation or propounding discovery.

Under the totality of the circumstances, PennyMac never waived its right to arbitrate claims against Black Knight, Inc. Because Black Knight, Inc. cannot meet this first burden as a matter of law, the inquiry stops here and the Court need not determine whether Black Knight, Inc. can establish prejudice. *See Gutierrez*, 889 F.3d at 1236.

### 2.      Black Knight, Inc. was not prejudiced.

Black Knight, Inc. cannot establish it was prejudiced. In considering whether prejudice occurred, courts "may consider the length of delay in demanding the arbitration and the expense incurred by that party from participating in the litigation process." *Gutierrez*, 889 F.3d at 1236 (quoting *S&H Contractors*, 906 F.2d at 1514). Although delay is considered, delay alone does not constitute prejudice. *Grigsby & Assocs.*, 635 F. App'x. at 733.

"Courts all recognize that a party seeking waiver has had to spend some time and money on litigation." *Diggett*, 2014 WL 12617591, at *6. Prejudice is found only "in situations where

the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate." *Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n*, 62 F.3d 1356, 1366 (11th Cir. 1995).  "[I]ncurring minimal fees in responding to lawsuits is insufficient to establish prejudice supporting a finding of waiver." *Grigsby & Assocs.*, 635 F. App'x at 734-35; *see also Bey v. XPO Logistics, Inc.*, No. 6:16-cv-219, 2017 WL 3923030, *3 (M.D. Fla. Sept. 7, 2017) ("Given the limited nature of the proceedings, Plaintiffs could not have expended more than minimal time and resources in prosecuting this action prior to the Motion to Compel.").  No prejudice sufficient to find an arbitration waiver has occurred where the parties engaged in little to no discovery and have not incurred substantial litigation-specific expenses or spent a substantial amount of time preparing litigation-specific documents.  *Diggett*, 2014 WL 12617591, at *6 (citing *Benoay*, 805 F.2d at 1440); *Smith v. Pay-Fone Sys., Inc.*, 627 F. Supp. 121, 124 (N.D. Ga. 1985) (defending a lawsuit to motion to dismiss stage was not substantial prejudice necessary to find waiver).

The litigation was pending for less than six months, and, other than preparing and responding to a dismissal and transfer motion, there was no litigation activity or discovery.

The length of the case is also not even the relevant time consideration.  From the time Black Knight, Inc. successfully argued it could enforce the Master Agreement to the time PennyMac informed Black Knight (through Black Knight LLC, which shares counsel with Black Knight, Inc.) it intended to invoke the arbitration provision as to the Black Knight, Inc. claims was less than one month.  There was no litigation activity during that time.  Black Knight, Inc.'s dismissal motion alone is not the type of litigation expense arbitration was designed to alleviate.  Though uncommon, if Black Knight, Inc. believed its motion was strong,

it could have renewed it in arbitration.  *See* R-33 of the AAA Commercial Arbitration Rules ("The arbitrator may allow the filing of and make rulings upon a dispositive motion only if the arbitrator determines that the moving party has shown that the motion is likely to succeed and dispose of or narrow the issues in the case.").  It chose not to.  As a matter of law, filing a motion to dismiss later deemed moot is not sufficient prejudice to avoid arbitration.  *See Grigsby & Assocs.*, 635 F. App'x. at 733.

Black Knight, Inc. can also not claim prejudice because the arbitration provision is contained in the very agreement it sought to enforce against PennyMac and an agreement which was drafted and required by Black Knight LLC's predecessor.

## IV. CONCLUSION

Judge Norton has already twice held PennyMac did not knowingly waive arbitration by filing litigation in federal court against Black Knight, Inc.  This case is an improper attempt by Black Knight, Inc. to have another court review the issue to set up a *res judicata* race.  Collateral estoppel prevents that type of appellate review, and this Court should abstain under both the *Brillhart* and *Younger* doctrines rather than sit as an appellate court over Judge Norton.

Even if the Court were to consider the substance of Black Knight, Inc.'s request, Judge Norton was right on the merits.  As a matter of law, Black Knight, Inc. cannot prove waiver.  PennyMac respectfully requests dismissal with prejudice.

**Request for Oral Argument**

Pursuant to local rule 3.01(j), PennyMac respectfully requests oral argument.

PennyMac estimates the parties will need an hour for argument.

**AKERMAN LLP**

*s/ Christian P. George*
Christian P. George, Florida Bar No. 41055
Email: christian.george@akerman.com
Celia C. Falzone, Esq., Florida Bar No.: 0016439
Email: celia.falzone@akerman.com
50 North Laura Street, Suite 3100
Jacksonville, Florida 32202
Phone: (904) 798-3700; Fax: (904) 798-3730

 *– and –*

William P. Heller, Esq., Florida Bar No.: 0987263
Email: william.heller@akerman.com
Las Olas Centre II
350 East Las Olas Blvd., Ste. 1600
Ft. Lauderdale, FL 33301
Phone: (954) 463-2700; Fax: (954) 463-2224

 *– and –*

Lawrence D. Silverman, Esq., Florida Bar No.: 7160
Email: lawrence.silverman@akerman.com
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, Florida 33131
Phone: (305) 374-5600; Fax: (305) 374-5095

*Counsel for PennyMac Loan Services, LLC*

53940321;1

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 22, 2020, a true and correct copy of the foregoing has been furnished electronically by the CM/ECF system to: **A. Graham Allen, Esq.**, Rogers Towers, P.A., 1301 Riverplace Boulevard, Suite 1500, Jacksonville, FL 32207-9000; **Emily Carson Lange, Esq.**, Rogers Towers, P.A., 1301 Riverplace Boulevard, Suite 1500, Jacksonville, FL 32207-9000; **Samuel Joseph Horovitz, Esq.**, Rogers Towers, P.A., 1301 Riverplace Boulevard, Suite 1500, Jacksonville, FL 32207-9000.

*/s/ Christian P. George*
Attorney

53940321;1