# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

BLACK KNIGHT, INC.,

      Plaintiff,

v.                                      Case No. 3:20-cv-660-TJC-PDB

PENNYMAC LOAN SERVICES,
LLC,

      Defendant.

_____

      The question before the Court is whether PennyMac Loan Services, LLC has waived its right to arbitrate federal antitrust and related state law claims against Black Knight, Inc. ("BKI").

      BKI requests that the Court enter a declaratory judgment finding that PennyMac waived the right to arbitrate the claims it is currently pursuing in arbitration and enter an order permanently enjoining the arbitration of those claims. (Doc. 1 at 8). PennyMac argues that the case should be dismissed based on the <u>Brillhart</u> doctrine, the <u>Younger</u> abstention doctrine, collateral estoppel, and because, as a matter of law, PennyMac did not waive its right to arbitrate against BKI. (Doc. 13). BKI filed a response to PennyMac's motion to dismiss (Doc. 17) and PennyMac filed a reply (Doc. 29). Subsequently, BKI filed its motion for summary judgment (Doc. 30) asserting that PennyMac waived its right to arbitrate as a matter of law. PennyMac filed a response. (Doc. 33).

On August 6, 2020 (Doc. 18) and March 1, 2021 (Doc. 35), the Court held hearings on pending motions, the record of which is incorporated by reference. At the March 1 hearing, the parties agreed that the entire record necessary for the Court to decide the issues is before the Court. Therefore, as agreed by the parties, the Court converts PennyMac's motion to dismiss and related briefings to a cross-motion for summary judgment. See Fed. R. Civ. P. 12(d), 56; see also Certified Multi-media Sols., Ltd. v. Preferred Contractors Ins. Co. Risk Retention Grp., LLC, 150 F. Supp. 3d 228, 236–37 (E.D.N.Y. 2015) (converting motion to dismiss for failure to state claim upon which relief could be granted to a motion for summary judgment).

## I.   FACTS

PennyMac is a residential mortgage servicer and lender. (Doc. 1 ¶ 9). Black Knight Servicing Technologies, LLC ("BKST"), not a party to this suit, is in the business of providing electronic mortgage services and software to the mortgage servicing industry. (Doc. 1 ¶ 8). BKI, the plaintiff, is BKST's parent company. Id.

In 2008, PennyMac and BKST's predecessor-in-interest, Fidelity Information Services, Inc. (not a party to this suit), entered into the Master Agreement whereby PennyMac became a registered user of BKST's proprietary mortgage servicing software ("MSP"). (Docs. 1 ¶ 9; 1-1; 30-1 at 1; 33-1 at 28, 34). The Master Agreement contains the following provisions:

2

**18.3 <u>Binding Arbitration.</u>**

[BKST] and [PennyMac] stipulate and agree that if they are unable to resolve any controversy arising under this Agreement . . . then such controversy, and ancillary claims not so resolved and not so subject, shall be submitted to binding arbitration at the election of either party . . . .

**32. GOVERNING LAW**

This Agreement shall be considered as entered into in the State of Florida and shall be governed by and construed in accordance with the laws of the State of Florida. Any action or proceeding based upon this Agreement or arising out of its performance shall be brought in a federal or state court of competent jurisdiction in Florida.

(Doc. 1-1 at 20, 25).

On November 5, 2019, BKST sued PennyMac in Florida state court alleging that PennyMac breached the Master Agreement and violated Florida trade secret laws (the "BKST Case"). <u>See</u> (Doc. 33-1 at 57–77). On November 6, 2019, PennyMac sued BKI in California federal court (the "BKI Case"), contending that the contractual restrictions and pricing terms for use of the MSP System violate federal and California antitrust statutes and constitute unfair competition under California common law.[1] (Doc. 1-2). In its complaint in the BKI Case, PennyMac did not mention BKST or the Master Agreement by name. <u>PennyMac Loan Services, LLC v. Black Knight, Inc.</u>, No. 2:19-cv-09526-RGK-JEM, 2020 WL 5985492, at *4 (C.D. Cal. Feb. 13, 2020) ("Although

---

[1] PennyMac's claims are collectively referred to as "antitrust claims" throughout this Order.

PennyMac asserts that the Complaint 'does not contain a single direct reference to the Master Agreement,' it contains numerous indirect references to the agreement, as well as to BKST.") (Doc. 1-3 at 5).

On January 2, 2020, BKI moved to transfer the BKI Case to this district under the venue provision of the Master Agreement, to which BKI is not a signatory. (Doc. 1-4 at 8). In February 2020, the California federal court transferred the case, concluding that PennyMac's antitrust claims are based on the Master Agreement. See PennyMac, 2020 WL 5985492 ,at *4–*5 (Doc. 1-3 at 7–8, 10).

Before the California federal court transferred the BKI Case, on January 6, 2020, PennyMac moved to compel arbitration of BKST's claims in the BKST Case. (Doc. 13-1 at 9, 28). On April 6, 2020, the Florida state trial court granted PennyMac's motion to compel arbitration as to BKST's claims. (Doc. 33-1 at 277). Subsequently, BKST filed a motion for reconsideration and an appeal. (Docs. 33-1 at 273; 13-1 at 101). The state trial court denied BKST's motion for reconsideration, and the state appeals court affirmed the trial court order granting PennyMac's motion to compel arbitration. (Docs. 13-1 at 136, 140; 34).

On April 17, 2020 (approximately six months after PennyMac filed suit in California), PennyMac voluntarily dismissed the transferred BKI Case without prejudice. See (Doc. 13-1 at 106). On April 28, 2020, PennyMac filed a demand for arbitration against BKST and BKI. (Doc. 1-5). On May 13, 2020,

PennyMac filed an amended demand for arbitration, which included the antitrust claims from the now dismissed BKI Case. (Doc. 1-6). In response, BKI pleaded an affirmative defense that PennyMac waived its right to arbitrate by pursuing the BKI Case in California. (Docs. 1 at 8; 17 at 8; 17-1). Later, on June 26, 2020, BKI filed its complaint in this case, seeking a declaration that PennyMac has waived its right to arbitrate the antitrust claims. (Doc. 1). The parties agree that the Court, not the arbitrator, must decide the waiver issue. The parties also agree that the record is fully developed and the essential facts are undisputed. The Court is thus able to decide the case on cross-motions for summary judgment.[2]

## II.   DISCUSSION

BKI brings this case under the Declaratory Judgment Act and the Federal Arbitration Act. The Court raised the issue of subject matter jurisdiction sua sponte (Doc. 18), and BKI submitted supplemental briefing on the issue (Doc. 27). Because BKI has sufficiently established that the Court has subject matter jurisdiction, see Pictet Overseas Inc. v. Helvetia Trust, 905 F.3d 1183 (11th Cir. 2018) (affirming order to permanently enjoin arbitration upon

---

[2] Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment should be granted "'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Estate of Todashev by Shibly v. United States, 815 F. App'x 446, 450 (11th Cir. 2020) (quoting Fed. R. Civ. P. 56(a)).

confirming that the relevant claims were not arbitrable); ICAP Sec. USA, LLC v. Blackwell, No. 5:11-cv-330-Oc-32TBS, 2011 WL 5525373 (M.D. Fla. Nov. 14, 2011) (granting a motion to preliminarily enjoin arbitration where the plaintiffs filed a declaratory judgment action on the arbitrability of a dispute and to permanently enjoin arbitration proceedings commenced by the defendant), the Court proceeds to adjudicate BKI's claims. The Court's analysis commences with a discussion of the applicability of the Brillhart and Younger abstention doctrines. Next, the Court examines whether BKI's action is collaterally estopped. The Court concludes by determining whether PennyMac waived its right to arbitrate its claims against BKI.

### A.    The Brillhart Doctrine and Younger Abstention Doctrine

There is no reason for the Court to abstain from ruling on BKI's claims under the Brillhart or Younger doctrines. The BKST Case, the state court proceedings pertaining to PennyMac's right to arbitrate claims against BKST, is no longer pending and this case raises different issues than the BKST Case. Cf. Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 495 (1942) ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same

parties."); <u>Narciso v. Walker</u>, 811 F. App'x 600, 602 (11th Cir. 2020)[3] ("For a federal court to abstain in favor of state court proceedings [under <u>Younger v. Harris</u>, 401 U.S. 37 (1971)], three questions must be answered in the affirmative: first, do [the proceedings] constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges.") (quoting <u>31 Foster Children v. Bush</u>, 329 F.3d 1255, 1274 (11th Cir. 2003)) (internal quotation marks omitted).

## B.    Collateral Estoppel

"Collateral estoppel, i.e., issue preclusion, refers to the effect of a judgment in foreclosing relitigation of an issue that has already been litigated and decided." <u>Wingard v. Emerald Venture Florida LLC</u>, 438 F.3d 1288, 1293 (11th Cir. 2006). "In considering whether to give preclusive effect to state-court judgments under res judicata or collateral estoppel, [] federal court[s] must apply the rendering state's law of preclusion." <u>Community State Bank v. Strong</u>, 651 F.3d 1241, 1263 (11th Cir. 2011). "Under Florida law, collateral estoppel will preclude relitigation of an issue when '(1) an identical issue, (2) has been fully litigated, (3) by the same parties or their privies, and (4) a final

---

[3] While "non-published" Eleventh Circuit opinions are non-precedential, they are persuasive, especially when the non-published opinions rely on Eleventh Circuit published, precedential authority.

decision has been rendered by a court of competent jurisdiction.'" <u>Wingard</u>, 438 F.3d at 1293; <u>see also</u> <u>Cozen O'Connor, PLC v. Mintz Truppman, P.A.</u>, 306 So. 3d 259, 264 (Fla. 3d DCA 2020). "Moreover, the litigated issue must have been 'a critical and necessary part of the prior determination.'" <u>Wingard</u>, 438 F.3d at 1293 (quoting <u>Goodman v. Aldrich & Ramsey Enter., Inc.</u>, 804 So. 2d 544, 546 (Fla. 2d DCA 2002)).

PennyMac argues that BKI's action is collaterally estopped. PennyMac advances that: the waiver issue in the present case is identical to the waiver issue addressed in the BKST Case because BKST and PennyMac litigated whether PennyMac waived its right to arbitrate <u>all</u> claims under the Master Agreement in that case; for the purpose of collateral estoppel, BKST and BKI are privies and thus identical; and the state trial court expressly considered and rejected the contention that PennyMac waived its right to arbitrate all claims under the Master Agreement. (Docs. 33 at 17–18; 13 at 16).

The Court does not agree. As argued by BKI and as reflected by the record, the key inquiry in the BKST Case was whether PennyMac waived its right to arbitrate BKST's breach of contract and trade secrets claims. See <u>Black Knight Servicing Technologies, LLC v. PennyMac Loan Services, LLC</u>, No. 2019-CA-007908, 2020 WL 2847547, at *2 (Fla. 4th Cir. Ct. April 6, 2020) ("The Court finds BKST failed to establish PennyMac knowingly waived its right to arbitrate BKST's claims. PennyMac's first and only action in this case was

8

seeking to compel arbitration.") (Doc. 33-1 at 280); <u>Black Knight Servicing Technologies, LLC v. PennyMac Loan Services, LLC</u>, No. 2019-CA-007908, Order Denying Motion for Reconsideration, at 1 ("[BKST] did not present any new evidence that PennyMac's filing the federal complaint [in the BKI Case] was a knowing waiver of its right to arbitrate this case[—the BKST Case].") (Doc. 13-1 at 136); <u>Black Knight Servicing Technologies, LLC v. PennyMac Loan Services, LLC</u>, No. 1D20-1492, 2021 WL 46135, at *1 (Fla. 1st DCA Jan. 6, 2021) ("PennyMac's filing of a separate lawsuit raising separate claims against a separate entity [BKI] does not establish an evidentiary basis of its intent to relinquish the right to arbitration with [BKST].") (Doc. 34 at 4). The issue of whether PennyMac waived its right to arbitrate its antitrust claims against BKI has not been fully litigated; therefore, BKI is not collaterally estopped from bringing this action. <u>See</u> <u>Eisenberg v. City of Miami Beach</u>, 54 F. Supp. 3d 1312, 1320–21 (S.D. Fla. 2014) ("The opportunity to fully and fairly litigate the issues to be estopped is 'the most significant consideration in determining whether to invoke collateral estoppel.'") (quoting <u>Hercules Carriers, Inc. v. Claimant State of Fla., Dept. of Transp.</u>, 768 F.2d 1558, 1580 (11th Cir.1985)).

## C.   Waiver of the Right to Arbitrate

As acknowledged by the parties, this Court is the appropriate forum for deciding the waiver of arbitration issue. "[A]bsent 'clear and unmistakable'

evidence of an agreement to the contrary, disputes regarding conduct-based waiver are left to the courts to decide." Plaintiff's Shareholders Corp. v. Southern Farm Bureau Life Ins. Co., 486 F. App'x 786, 789 (11th Cir. 2012) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)); see also Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 15 (1st Cir. 2005) ("There are no references to waiver or similar terms anywhere in the arbitration agreement. Neither party should be forced to arbitrate the issue of waiver by conduct without a clearer indication in the agreement that they have agreed to do so.").

Eleventh Circuit precedent provides that:

> To determine whether a party has waived its contractual right to arbitrate, courts apply a two-part test: First, [they] decide if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right, and, second, [they] look to see whether, by doing so, that party has in some way prejudiced the other party. There is no settled rule, however, as to what constitutes a waiver or abandonment of the arbitration agreement.

Freeman v. SmartPay Leasing, LLC, 771 F. App'x 926, 932 (11th Cir. 2019) (quoting Ivax Corp. v. B. Braun of Am., Inc., 286 F.3d 1309, 1316 (11th Cir. 2002); Howard Hill, Inc. v. George A. Fuller Co., Inc., 473 F.2d 217, 218 (5th Cir. 1973)) (internal citations and quotation marks omitted) (alterations in original).[4]

---

[4] The Eleventh Circuit has explained that the purpose of the waiver

"A key factor in deciding [if a party has acted inconsistently with its arbitration right] is whether a party has 'substantially invoke[d] the litigation machinery prior to demanding arbitration.'" <u>Gutierrez v. Wells Fargo Bank, NA</u>, 889 F.3d 1230, 1236 (11th Cir. 2018) (quoting <u>S & H Contractors v. A.J. Taft Coal Co., Inc.</u>, 906 F.2d 1507, 1514 (11th Cir. 1990)) (internal quotation marks and alterations omitted); <u>see also</u> <u>Davis v. White</u>, 795 F. App'x 764, 768 (11th Cir. 2020) (quoting <u>Gutierrez</u>, 889 F.3d at 1236–37) ("Whether a party gave 'fair notice' of its intent to exercise its arbitration rights at a relatively early stage of litigation 'is a primary factor in considering whether a party has acted consistently with its arbitration rights.'"). However, "[n]ot all litigation activity results in waiver," <u>Bey v. XPO Logistics, Inc.</u>, No. 6:16-v-2195-Orl-37KRS, 2017 WL 3923030, at *3 (M.D. Fla. Sept. 7, 2017), and "the length of

---

doctrine is to prevent litigants from abusing the judicial process:

> Acting in a manner inconsistent with one's arbitration rights and then changing course mid-journey smacks of outcome-oriented gamesmanship played on the court and the opposing party's dime. The judicial system was not designed to accommodate a defendant who elects to forego arbitration when it believes that the outcome in litigation will be favorable to it, proceeds with extensive discovery and court proceedings, and then suddenly changes course and pursues arbitration when its prospects of victory in litigation dim. Allowing such conduct would ignore the very purpose of alternative dispute resolution: saving the parties' time and money.

<u>Davis v. White</u>, 795 F. App'x 764, 768 (11th Cir. 2020) (quoting <u>Gutierrez v. Wells Fargo Bank, NA</u>, 889 F.3d 1230, 1236 (11th Cir. 2018)).

the delay is not dispositive; the activities that occurred during the delay are the focal point of the analysis," Diggett v. Swisher Int'l, Inc., No. 3:14-cv-0242-J-20JBT, 2014 WL 12617591, at *3 (M.D. Fla. Aug. 28, 2014); see also Pirtek USA, LLC v. Twillman, No. 6:16-cv-01302-Orl-37TBS, 2016 WL 7116205, at *6 (M.D. Fla. Dec. 7, 2016) ("Invocation of the litigation machinery prior to demanding arbitration is inconsistent with arbitration rights, as is a lengthy delay in seeking arbitration when coupled with other substantial inconsistent conduct.").

"When evaluating prejudice, '[courts] may consider the length of delay in demanding arbitration and the expense incurred by [the party asserting waiver] from participating in the litigation process." Davis, 795 F. App'x at 768 (quoting S & H Contractors, Inc., 906 F.2d at 1514); see also Grigsby & Assocs., Inc. v. M Securities Inv., 635 F. App'x 728, 731–32 (11th Cir. 2015). "[B]ecause federal law favors arbitration, any party arguing waiver of arbitration bears a heavy burden of proof. But the doctrine of waiver is not an empty shell." Freeman, 771 F. App'x at 932 (quoting Stone v. E.F. Hutton & Co., 898 F.2d 1542, 1543 (11th Cir. 1990); In re Checking Account Overdraft Litig., 754 F.3d 1290, 1294 (11th Cir. 2014)) (internal quotation marks and citations omitted). The Court proceeds to analyze whether PennyMac has waived its right to arbitrate its antitrust claims against BKI.

1.   The parties dispute when PennyMac's right to arbitrate arose.

A right to arbitrate must exist before a party can waive it. <u>Barkwell v. Sprint Communications Co., L.P.</u>, No. 4:09-CV-56(CDL), 2012 WL 112545, at *4 (M.D. Ga. Jan. 12, 2012) ("It is true that if a claim is not arbitrable when an action is commenced, participation in litigation does not constitute a waiver of arbitration . . . .") (citing <u>Benoay v. Prudential-Bache Securities, Inc.</u>, 805 F.2d 1437, 1440 (11th Cir. 1986)); <u>Guy Roofing, Inc. v. Angel Enters., LLC</u>, No. 17-cv-14081-ROSENBERG/MAYNARD, 2017 WL 8890873, at *5 (S.D. Fla. Sept. 6, 2017) ("[Plaintiff] should not be said to have waived a[n arbitration] right that it may not even possess."), <u>report and recommendation adopted</u>, 2017 WL 8890874, at *1 (S.D. Fla. Sept. 26, 2017). Additionally, a party must have knowledge of its right to arbitrate before it can waive it. <u>Wilson v. Pars Builders II, Inc.</u>, 879 F. Supp. 1187, 1189 (M.D. Fla. 1995); <u>see also Raymond James Fin. Servs., Inc. v. Saldukas</u>, 896 So. 2d 707, 711 (Fla. 2005) ("We have defined 'waiver' as the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right.").

In analyzing BKI's waiver claim, the Court was concerned that PennyMac never had a right to arbitrate claims against BKI in the first place. However, BKI has affirmatively asserted in its pleadings that PennyMac's

antitrust claims are arbitrable and reaffirmed that position at the March 1 hearing, despite being pressed on the issue. PennyMac concurs. The parties are less clear concerning the source of PennyMac's arbitration right, and the Court must determine the source because it materially impacts the waiver analysis.

BKI is not a signatory to the Master Agreement's arbitration clause, and "[g]enerally, a [signatory] cannot compel a non-[signatory] to arbitrate." Ray v. NPRTO Fla., Inc., 322 F. Supp. 3d 1261, 1262 (M.D. Fla. 2017). Nonetheless, Florida courts have recognized that a party to an arbitration agreement can compel a non-party to arbitrate under the theories of (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) equitable estoppel. Johnson v. Pires, 968 So. 2d 700, 701–02 (Fla. 4th DCA 2007); see also Parfitt v. Llorens, No. 2:19-cv-727-FtM-38NPM, 2020 WL 3452225, at *7 (M.D. Fla. Jun. 23, 2020). Neither party has argued that the incorporation by reference, assumption, or veil-piercing theories are applicable. In its motion for summary judgment, BKI advances that equitable estoppel and agency principles could provide PennyMac a right to compel arbitration against BKI. (Doc. 30 at 14–15, 16 n.8). While PennyMac says that its right to arbitrate is not based on agency principles, (Doc. 33 at 10 n.5) ("[BKI] has no support for the idea [BKST] was acting as [BKI]'s agent when the agreement was signed."), PennyMac agrees that Florida's equitable

estoppel doctrine provides it a right to compel BKI to arbitrate, (Doc. 13 at 19–20).

BKI's agency argument is unconvincing. BKST is Fidelity Information Services' successor-in-interest to the Master Agreement, and BKI has not sufficiently shown that Fidelity acted on behalf of BKI in signing the Master Agreement or that BKST acted on behalf of BKI in succeeding to the rights and obligations under the Master Agreement. (Docs. 30 at 14–16; 33 at 10 n.5).[5] Thus, if the Court accepts the parties' agreement that PennyMac's antitrust claims are arbitrable, the most likely source of that right is Florida's equitable estoppel doctrine.

Under Florida law, there are at least two distinct strands of equitable estoppel. Compare Gunson v. BMO Harris Bank, N.A., 43 F. Supp. 3d 1396, 1401 (S.D. Fla. 2015), Kroma Makeup EU, LLC v. Boldface Licensing +

---

[5] Under Florida law, "'an agent can bind a principal to an arbitration agreement just like any other contract.'" Dye v. Tamko Building Products, Inc., 908 F.3d 675, 685 (11th Cir. 2018) (quoting Fi-Evergreen Woods, LLC v. Estate of Robinson, 172 So. 3d 493, 497 Fla. 5th DCA 2015)). Additionally:

> [A]n agency relationship requires (1) the principal to acknowledge that the agent will act for it; (2) the agent to manifest an acceptance of the undertaking; and (3) control by the principal over the actions of the agent . . . . [A] grant of agency authority also necessarily implies the authority to do acts that are incidental to it, usually accompany it, or are reasonably necessary to accomplish it.

Id. at 684 (internal citations and quotation marks omitted).

Branding, Inc., No. 6:14-cv-1551-Orl-40GJK, 2015 WL 6869734, at *3 (M.D. Fla. Nov. 9, 2015), and Shetty v. Palm Beach Radiation Oncology Assocs.-Sunderman K. Shetty, M.D., P.A., 915 So. 2d 1233, 1235 (Fla. 4th DCA 2005), with Stalley v. Transitional Hospitals Corp. of Tampa, Inc., 44 So. 3d 627, 632 (Fla. 2d DCA 2010). The most pertinent strand allows a signatory (here PennyMac) to compel a non-signatory (BKI) to arbitrate. Specifically, Florida courts have held that "an individual [(e.g., a non-signatory)] who makes use of a contract as long as it works to his or her advantage is estopped from avoiding the contract's provisions concerning the forum in which any dispute should be resolved." Stalley, 44 So. 3d at 632; see also Allied Professionals Ins. Co. v. Fitzpatrick, 169 So. 3d 138, 140, 142 (Fla. 4th DCA 2015) (applying equitable estoppel in a more typical circumstance where a non-signatory plaintiff invokes substantive provisions of a contract to which it is not party to establish claims against a contract signatory). Here, BKI and PennyMac both highlight that BKI, a non-signatory to the Master Agreement, premised its motion to transfer the BKI Case brought by PennyMac on the Master Agreement's venue provision. Additionally, PennyMac posits that equitable estoppel applied once "[BKI] attempted to and successfully did invoke the [venue] provision of the Master Agreement . . . ." (Doc. 13 at 20). With both parties in agreement that equitable estoppel principles apply here, the Court accepts that PennyMac has a right to arbitrate its antitrust claims against BKI and proceeds to determine

the contentious issue of when PennyMac first had actual or constructive knowledge of its arbitration right.

Contrary to BKI's argument, PennyMac claims were not arbitrable when it first filed the BKI Case in California. (Docs. 13 at 19–20; 17 at 14, 16–17; 30 at 8–9, 14–15). BKI is not a signatory to the Master Agreement's arbitration clause, and BKI has failed to show that PennyMac could have immediately moved to compel arbitration against BKI under one of the Florida law theories (including equitable estoppel) permitting an arbitration agreement signatory to compel a non-signatory to arbitrate. The first time that PennyMac's right to arbitration against BKI even arguably arose was when BKI relied upon the Master Agreement's venue provision in its motion to transfer the BKI Case. Accordingly, PennyMac did not waive its right to arbitrate by simply filing the BKI Case. Cf. Gutierrez, 889 F.3d at 1239 ("[W]e have found no authority that requires a party to file a conditional arbitration motion against possible future adversaries—at a juncture in which adjudicating, much less exercising jurisdiction over, those claims is impossible—in order to avoid waiving its rights with regard to those parties."); Alabama Mun. Ins.Corp. v. Munich Reins. America, Inc., No. 2:16-cv-948-WHA-SRW, 2017 WL 3927607, at *3–5 (M.D. Ala. Sept. 7, 2017).

BKI alternatively contends that PennyMac had knowledge of its arbitration right on January 2, 2020, when BKI invoked the venue provision of

the Master Agreement in its motion to transfer the BKI Case. (Docs. 17 at 17; 30 at 15–16). PennyMac counters that it was not appropriate for it to file a demand for arbitration until the California federal court granted BKI's motion to transfer on the basis of the Master Agreement. (Docs. 29 at 4–5; 33 at 7, 10).[6]

While true that BKI invoked the Master Agreement in the motion to transfer filed on January 2, 2020, PennyMac argued in opposition that the Master Agreement venue provision did not apply because BKI had no authority to invoke it. (Doc. 33-1 at 90) ("[BKI] is not entitled to rely on the governing law provision of the Master Agreement between PennyMac and [BKST] because BKI is not a party to that agreement . . . ."). It was only on February 13, 2020, when the California court granted the motion to transfer that there was a clear record of BKI, a non-signatory, applying the Master Agreement against PennyMac, a signatory, to transfer the BKI Case to BKI's preferred venue. Thus, PennyMac was not on notice of its right to arbitrate until that date. BKI's proposed date—the date on which it filed its motion to transfer—is less suitable because PennyMac had reasonable doubts as to BKI's ability to invoke the Master Agreement given BKI's non-signatory status. See Winans v. Weber, 979 So. 2d 269, 274 (Fla. 2d DCA 2007) (reasoning that actual or

---

[6] PennyMac goes even further, arguing that it could not compel arbitration in the BKI Case until the Florida state trial court ruled on its motion to compel arbitration in the BKST Case, see (Docs. 29 at 4–5; 33 at 10–11), but the Court does not accept this argument.

constructive knowledge of a contractual right is required before a party can waive such right). Cf. Intel Corp Inv. Policy Committee v. Sulyma, 140 S.Ct. 768, 776 (2020) ("Legal dictionaries [define] 'actual knowledge' [as]: '[r]eal knowledge as distinguished from presumed knowledge or knowledge imputed to one.'").

> 2.   PennyMac's conduct was not inconsistent with its arbitration right.

In the vast majority of cases involving arbitration waiver, it is the party being sued that belatedly seeks arbitration. See Ferrari v. D R Horton, Inc., No. 2:14-cv-01941-LSC, 2015 WL 10913396, at *2 (N.D. Ala. Feb. 20, 2015) ("While many cases have addressed waiver of arbitration in the context where the defendants have been content to litigate a claim in court for a period of time before demanding arbitration, fewer cases have addressed the more anomalous situation of when a plaintiff initiates suit in federal court and later demands arbitration."). In the BKI Case, it was the plaintiff, PennyMac, that sought to arbitrate despite initially filing its claims in federal court. Thus, in examining whether PennyMac's conduct was inconsistent with the right to arbitrate, the Court primarily references cases in which a plaintiff, rather than a defendant, litigates claims in court before seeking to arbitrate. See Porter v. Frank Cockrell Body Shop, Inc., No. 20-0050-CG-B, 2020 WL 4195001, at *2 (S.D. Ala. Jul. 20, 2020) ("To support her waiver argument [the] [p]laintiff points to . . .

[S & H Contractors] . . . . However, in S & H Contractors, unlike here, the party demanding arbitration was the plaintiff."); Simms v. Cavalry Portfolio Servs., L.L.C., No. 1:08-cv-3111-CAM-CCH, 2009 WL 10712104, at *7 (N.D. Ga. Jul. 20, 2009) (distinguishing waiver cases in which the plaintiff moved to compel arbitration from those in which the defendant moved to compel arbitration).

At least five case from within the Eleventh Circuit address plaintiff's waiver of arbitration. See, e.g., S & H Contractors, 906 F.2d at 1514 (finding waiver where the plaintiff had filed two motions, engaged in five depositions, and waited eight months before demanding arbitration); Alabama Mun. Ins. Corp., 2017 WL 3927607, at *4; Ferrari, 2015 WL 10913396, at *2 (concluding a plaintiff acted inconsistently with its arbitration right by pursuing litigation in federal court for almost four months, during which time the defendant filed an answer and compulsory counterclaims, met with the plaintiff and filed a Rule 26(f) planning report, and filed and fully briefed a motion to dismiss); Davidson v. PDS Technical Servs., Inc., No. 8:10-cv-1755-T-23EAJ, 2010 WL 4639311, at *4 (M.D. Fla. Nov. 8, 2010) (finding plaintiffs who waited approximately nine months after denial of conditional class certification to move to compel arbitration acted inconsistently with their arbitration right); OM Group, Inc. v. Mooney, No. 2:05-cv-546-FtM-33SPC, 2006 WL 68791, at *1, *7 (M.D. Fla. Jan. 11, 2006).

At the March hearing, BKI stated the case that best supports its waiver claim is <u>OM Group.</u> In <u>OM Group</u>, the parties were signatories to an employment agreement containing an arbitration clause and the parties simply disputed whether the plaintiff's statutory claim fell within the scope of the arbitration clause. 2006 WL 68791 at *2–3, *6. Additionally, the plaintiff did not move to compel arbitration until after the defendant had filed an answer, eight counterclaims, and a motion for a temporary restraining order and preliminary injunction. <u>Id.</u> at *1, *7. Upon finding the statutory claim was arbitrable, the court determined that the plaintiff acted inconsistently with its right to arbitrate, reasoning that the simple act of submitting an arbitrable claim to a federal court can waive a plaintiff's right to arbitrate the claim. <u>Id.</u> at *7. BKI contends this Court should apply similar reasoning, but this case is distinguishable from <u>OM Group</u>. Here, PennyMac and BKI were not signatories to a mutual arbitration agreement. In addition, PennyMac could not have waived its right to arbitrate the antitrust claims by filing the BKI Case because, as already discussed, PennyMac could not compel BKI to arbitrate at the outset of the case. PennyMac's arbitration right is based on Florida's equitable estoppel doctrine; the right first arose when BKI successfully relied upon the Master Agreement to transfer the BKI Case.

Of the cases identified, <u>Alabama Mun. Ins. Corp.</u> is most analogous as the plaintiff's right to arbitrate arose months after the plaintiff filed suit. 2017

WL 3927607, at *1, *4. The plaintiff originally filed a claim in federal court for breach of a contract that did not contain an arbitration clause. Id. Approximately four months after the plaintiff filed its non-arbitrable claim, the plaintiff filed, unopposed, an amended complaint that alleged breach of a separate contract containing an arbitration clause. Id. at *1. The plaintiff moved to compel arbitration approximately one month after filing its amended complaint, and the Alabama Mun. Ins. Corp. court based its waiver analysis only on the litigation activities that occurred after the plaintiff filed its amended complaint. Id. at *4–5. The court reasoned:

> [A]ctions which [the plaintiff] took toward litigation before its Amended Complaint should not be considered waiver of the right to seek arbitration because it was not until [the plaintiff] filed the Amended Complaint that it alleged breach of a contract which contained an arbitration clause. In other words, the scope of the case changed because arbitration only became relevant once the Amended Complaint was filed [—i.e., once the plaintiff's arbitration right arose].

Id. at *4.

In Alabama Mun. Ins. Corp., during the one-month delay between the filing of the amended complaint and the motion to compel arbitration, the defendant filed an answer and the plaintiff filed notices of two depositions. Id. at *2, *4. Additionally, while its motion to compel arbitration was pending, the plaintiff conducted the two previously noticed depositions. Id. Upon consideration of these activities, the court determined that "the Eleventh

Circuit requires more participation in the litigation process to evince an intent inconsistent with the right to arbitrate" and denied waiver. Id. at *4–*5.

In the BKI Case, PennyMac's claims were not arbitrable at the moment it filed its lawsuit against BKI. Like in Alabama Mun. Ins. Corp., the only litigation activities relevant to the waiver analysis are those that occurred after PennyMac first gained knowledge of its right to arbitrate on February 13, 2020, when the California court granted the motion to transfer the BKI Case. See Part II.C.1 above. Following transfer, an agreed motion for extension of time to respond to PennyMac's complaint was filed, both parties filed notices of appearance and pro-hac vice motions, PennyMac filed a motion for withdrawal of counsel, the parties, due to the COVID-19 pandemic, filed a joint motion for extension of time to file upcoming case documents, and then PennyMac filed a notice of voluntary dismissal without prejudice on April 17, 2020. (Doc. 1-4 at 9–12). On April 28, 2020, PennyMac filed a demand for arbitration against BKST and BKI. (Doc. 1-5). Thus, after the case was transferred, it was only two months, with not much activity, before PennyMac dismissed the BKI Case and sought arbitration. As a matter of law, BKI has not shown that PennyMac waived the right to arbitrate the antitrust claims PennyMac initially filed in the BKI Case. Cf. Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc., 626 F.3d 156, 159–60 (2d Cir. 2010) (finding waiver where "[e]leven months elapsed between [the plaintiff]'s initial filings

in state and federal court and its motion to compel arbitration with [the defendants]" and where the parties engaged in substantial litigation); PPG Indus., Inc. v. Webster Auto Parts, Inc., 128 F.3d 103, 107 (2d Cir. 1997) (reasoning a "five-month delay, by itself, is not enough to infer waiver of arbitration"); Katsoris v. WME IMG, LLC, 237 F. Supp. 3d 92, 102–03 (S.D.N.Y. 2017).

Accordingly, it is hereby

**ORDERED:**

1. Defendant PennyMac Loan Services, LLC's Motion to Dismiss, which has been converted to a cross-motion for summary judgment, (Doc. 13) is **DENIED** as to the Brillhart doctrine, Younger abstention doctrine, and collateral estoppel and **GRANTED** as to the waiver issue.

2. Plaintiff Black Knight, Inc.'s Motion for Summary Judgment (Doc. 30) is **DENIED**.

3. The Court will enter a Declaratory Judgment that PennyMac Loan Services, LLC has not waived its right to arbitrate the antitrust and related claims raised in the BKI Case. The Clerk will then close the file.

**DONE AND ORDERED** in Jacksonville, Florida the 22nd day of March, 2021.

24



TIMOTHY J. CORRIGAN
United States District Judge

tn
Copies:
Counsel of record